```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/5/18
```

**ANDERSON DODSON, P.C.**

November 15, 2017

Hon. P. Kevin Castel
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Via ECF

Re:  Kim v. 32 Music Studio, Corp. et al.
     Case No. 1:17-cv-02233 (PKC)
     **Joint Motion for Settlement Approval**

> *[Handwritten annotation:]* The Court declines to approve the settlement without further information with regard to the fees to be paid by Mr. Kim to his lawyers. SO ORDERED. [signature] USDJ 1-3-17

Your Honor:

We represent the Plaintiff Min Kim, a former employee of Defendants, in the above-referenced action seeking, among other things, alleged unpaid/underpaid wages pursuant to the federal Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). We are pleased to report that the parties have fully resolved this action, on an individual basis, and have executed a settlement agreement that, among other things, disposes of all claims in this action with prejudice. See Exhibit "A," Settlement Agreement. The settlement of this action is in recognition of the desire of all parties to avoid any further protracted litigation. The language of this letter has been drafted by Plaintiff's counsel and consented to by Defendants' counsel.

The parties respectfully request that the Court approve the Settlement Agreement and enter an Order of Dismissal, thereby effectuating a dismissal of this action with prejudice. As the Plaintiff's action arises under the FLSA, the parties' settlement must be approved by this Court. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015); *Lynn's Food Stores, Inc. v. United States ex. rel. U.S. Dept. of Labor*, 679 F.2d 1350 (11th Cir. 1982)).

Case 1:17-cv-02233-PKC   Document 24   Filed 01/05/18   Page 2 of 10
Case 1:17-cv-02233-PKC   Document 23   Filed 11/15/17   Page 2 of 4

Page 2 of 4

### Cheeks

In *Cheeks*, the Second Circuit articulated that its rationale for requiring approval is premised largely on the notion that "Low wage employees, even when represented in the context of a pending lawsuit, often face extenuating economic and social circumstances and lack equal bargaining power; therefore, they are more susceptible to coercion or more likely to accept unreasonable, discounted settlement offers quickly." *Cheeks*, at *17.

The Court referred to a number of district court decisions rejecting proposed FLSA settlements containing the following types of provisions:

1. Highly restrictive confidentiality provisions (*Lopez v. Nights of Cabiria, LLC*, —— F.Supp.3d ——, No. 14–cv–1274 (LAK), 2015 WL 1455689, at *3 (S.D.N.Y. March 30, 2015)

2. Overbroad releases (*Id.*)

3. Restriction on a plaintiff's attorney not to "represent any person bringing similar claims against Defendants." *Guareno v. Vincent Perito, Inc.*, 14cv1635, 2014 WL 4953746, at *2 (S.D.N.Y. Sept. 26, 2014).

4. Economic desperation of the plaintiffs. *Nall v. Mai–Motels, Inc.*, 723 F.3d 1304, 1306 (11th Cir.2013); *Walker v. Vital Recovery Servs., Inc.*, 300 F.R.D. 599, 600 n. 4 (N.D.Ga.2014)

*Cheeks*, at *17.

Here, none of these factors would preclude approval of this settlement. First, the agreement does not contain a confidentiality provision. Second the release in this case is not general, but is narrowly tailored to the wage claims raised in the Complaint. Third, the Agreement contains no restriction on Plaintiffs' counsel's ability to represent other individuals. Fourth, the settlement was not entered into on the basis of Plaintiffs' economic desperation. Plaintiffs' settlement amount is a significant amount of money, not the small amounts at issue in the cases cited by *Cheeks*.

### ***Bona Fides*** of the Dispute

The parties represent to the Court that the settlement is a fair and reasonable resolution of a *bona fide* dispute reached as a result of contested litigation. The parties attest to the fairness and reasonableness of their amicable settlement. The parties agreed to the terms of this settlement during a Court Ordered mediation at which they were counseled by their respective

Case 1:17-cv-02233-PKC   Document 24   Filed 01/05/18   Page 3 of 10
Case 1:17-cv-02233-PKC   Document 23   Filed 11/15/17   Page 3 of 4

Page 3 of 4

attorneys.

In order to provide Your Honor with additional information in which to evaluate the attached settlement agreement for fairness and reasonableness we offer the following brief narrative account of the case and its proposed resolution. As Your Honor will see from the below and the public docket, almost all, if not all, material issues in this case are contested.

On March 28, 2017, Plaintiff filed his Complaint against Defendants 32 Music Studio, Corp d/b/a 5 Bar Karaoke and Lounge ("5 Bar") and Du Kyu "Howard" Park ("Park") [Dkt 1]. The complaint alleges violations of the FLSA and NYLL relating to alleged subminimum wage payments, no overtime payments, failure to make spread of hours payments, improper retention of tips by management and other non-traditionally tipped employees, as well as Defendants' alleged willfulness as to all of the above. See generally, Dkt. 1.

On June 12, 2017, Defendants interposed Answer denying all material elements of Plaintiff's claims. Dkt. 16. With specificity, and as relevant to this motion, Defendants contested FLSA jurisdiction in so much as they denied meeting the requisite $500,000 monetary threshold for enterprise coverage, and that individual Defendant Park was not an "employer" as that term is defined by the laws at issue. Dkt. 16 at ¶¶ 9-11; 14-17. Further, Defendants denied all of Plaintiff's individual factual allegations as to his pay rates, hours worked, and tips received/retained by management. Id. at ¶¶ 21-42.

By Plaintiff's calculations, which are based on records produced by Defendants, Plaintiffs' back wages (minimum wage, overtime, and spread of hours pay) total $9,658.44. This amount accounts for NY's higher minimum wage, which results in damages higher than those available to Plaintiff under the FLSA, the only claim for which approval is necessary.[1] Liquidated damages on this amount, if proven, would add an additional $9,658.44 (again under NY law, not the FLSA which would yield a lower figure). Thus, Plaintiffs' back wage claims (minimum wage, overtime,

---

[1] See Amaya v. Tedesco, 2011 U.S. Dist. LEXIS 15316 (E.D.N.Y. 2011) (holding an FLSA claim requires court supervision, but explaining that a release under the NYLL is valid without court supervision, and noting that district courts have "roundly rejected" the argument that the federal rule applies to the NYLL); Wright v. Brae Burn Country Club, Inc., 2009 U.S. Dist. LEXIS 26492 (S.D.N.Y. Mar. 20, 2009) ("There is no express restriction on the private settlement of waiver of wage and hour claims under New York law."); Manning v. Joseph, 304 N.Y. 278, 282, 107 N.E.2d 446 (1952) ("We see no merit to petitioners' contentions that the releases are against public policy and prohibited by . . . section 220 of the [New York] Labor Law. . . .").

Case 1:17-cv-02233-PKC   Document 24   Filed 01/05/18   Page 4 of 10
Case 1:17-cv-02233-PKC   Document 23   Filed 11/15/17   Page 4 of 4

Page 4 of 4

and spread of hours pay), on his best day and including liquidated damages, total just over $19,000. Defendants dispute Plaintiff's calculations and the propriety of liquidated damages.

The remainder of Plaintiffs claims, relating to improper retention of tips, NY statutory penalties for record keeping, and the alleged retaliation comprise the remainder of the negotiated settlement. As with the back wages claims, Defendants dispute that there is any liability for these claims and whether Plaintiff would be entitled to any compensation for them. Under these circumstances, with the amount of money being paid by the Defendants to Plaintiff in full resolution of all his claims, the Court should readily conclude that the settlement is fair and reasonable.

As detailed above, the resolution of this case largely centered around significant disputes of material fact that could only be resolved by conducting extensive, time consuming, and expensive discovery, motion practice, and trial. However, in lieu of contested litigation the parties were able to reach a mediated resolution that brings closure to Plaintiff's claims only three months after Defendants' appeared. All parties desired to come to a resolution of the claims rather than escalate tensions further and move toward an uncertain outcome.

Therefore, based on the above, the parties have identified a bona fide dispute (the resolution of which could only be solved by contentious and expensive litigation), provided the Court with Plaintiff's "best day" calculations, and with this information jointly request that Your Honor approve the settlement agreement and So Order the included stipulation of dismissal.

Should the Court desire further information regarding this issue, we jointly request that the Court schedule a telephone conference.

Thank you for your consideration of these matters.

Sincerely

*[signature]*

Penn A. Dodson, Esq.
*penn@andersondodson.com*

Attorney for Plaintiff

Case 1:17-cv-02233-PKC Document 24 Filed 01/05/18 Page 5 of 10
DocuSign Envelope ID: C557DB20-611D-4EAF-B625-180445BB561C
Case 1:17-cv-02233-PKC Document 23-1 Filed 11/15/17 Page 1 of 6

## SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE

This Settlement Agreement and Mutual General Release ("Agreement") is hereby entered into by and between Min Kim ("Kim") and 32 Music Studio, Corp. ("32 Music") and Du Kyu Park ("Park", and collectively with 32 Music, "Defendants") for good and valuable consideration. Kim and Defendants are collectively referred to as the "Parties."

**WHEREAS**, Kim filed a complaint in the United States District Court, Southern District of New York, Case No. 1:17-cv-02233-PKC, alleging violations of the Fair Labor Standards Act and New York Labor Laws (the "Action"); and

**WHEREAS**, Defendants deny and continue to deny that they have engaged in any form of unlawful employment action, or engaged in any form of wrongdoing against Kim; and

**WHEREAS**, the Parties have agreed that it is in their mutual interest to avoid further costs of litigation, to resolve fully and finally all of their disputes, including the claims and charges concerning, relating to, or arising out of Kim's employment and separation therefrom, upon the terms and conditions more fully set forth hereinafter;

**NOW, THEREFORE**, in consideration of the mutual promises and covenants contained herein, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. **Non-Admission of Liability.** The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall in any way be construed as an admission by either Party of any liability or any act of wrongdoing whatsoever against the other. Rather, this Agreement constitutes the good faith settlement and release of disputed claims, and it is acknowledged and agreed by the Parties that this Agreement is being entered into to avoid the further burden, expense, delay and uncertainty of litigation.

2. **Settlement Benefits.** In consideration for the Parties signing this Agreement and agreeing to voluntarily dismiss all claims asserted in the Complaint with prejudice, including any and all claims for attorneys' fees, and entering into the mutual general release as detailed below, Defendants agree to pay a total of **$65,000.00**, made payable to "AndersonDodson, P.C., f/b/o Min Kim". The aforementioned payment shall hereinafter be referred to as the "Settlement Payment". The Settlement Payment by Defendants shall be paid as follows:

   a. TEN THOUSAND DOLLARS ($10,000.00) within thirty (30) days of the date the Parties fully execute this Agreement ("Execution Date");
   b. FIVE THOUSAND DOLLARS ($5,000.00) within sixty (60) days of the Execution Date;
   c. FIVE THOUSAND DOLLARS ($5,000.00) within ninety (90) days of the Execution Date;
   d. FIVE THOUSAND DOLLARS ($5,000.00) within one hundred twenty (120) days of the Execution Date;
   e. FIVE THOUSAND DOLLARS ($5,000.00) within one hundred fifty (150) days of the Execution Date;
   f. FIVE THOUSAND DOLLARS ($5,000.00) within one hundred eighty (180) days of the Execution Date;

Case 1:17-cv-02233-PKC Document 24 Filed 01/05/18 Page 6 of 10
DocuSign Envelope ID: C557DB20-611D-4EAF-B62F-180445BB561C
Case 1:17-cv-02233-PKC Document 23-1 Filed 11/15/17 Page 2 of 6

g. FIVE THOUSAND DOLLARS ($5,000.00) within two hundred ten (210) days of the Execution Date;
h. FIVE THOUSAND DOLLARS ($5,000.00) within two hundred forty (240) days of the Execution Date;
i. FIVE THOUSAND DOLLARS ($5,000.00) within two hundred seventy (270) days of the Execution Date;
j. FIVE THOUSAND DOLLARS ($5,000.00) within three hundred (300) days of the Execution Date;
k. FIVE THOUSAND DOLLARS ($5,000.00) within three hundred thirty (330) days of the Execution Date; and
l. FIVE THOUSAND DOLLARS ($5,000.00) within three hundred sixty (360) days of the Execution Date.

Said checks shall be delivered to AndersonDodson, P.C., at 11 Broadway, Suite 615, New York, New York 10004. Upon request of Defendants or their counsel, Plaintiff's counsel will provide wire transfer instructions or online invoices that may be paid online via ACH payment (bank transfer). The inclusion of an email address in the signature block below shall constitute a request for invoices to be sent electronically and permission for Plaintiffs' counsel to make contact with that email address holder for those purposes. In all of these cases, the moneys will be deposited into Plaintiff's counsel's trust account and Plaintiff's counsel shall be responsible for the distribution of those moneys to the Plaintiff and his counsel.

The Parties agree to be responsible for their own counsel fees incurred in relation to the Action. In the alternative, Kim understands that the Defendants' payment of the settlement includes the payment for Kim's counsel fees incurred in relation to this Action. Kim understands and agrees that he will not seek anything further, including any other payments from Defendants relating to any claim arising out of the Action, provided Kim receives all of the Settlement Payments as stated above. In the event that a Settlement Payment is not received by the payment due date, or if a check is returned due to lack of sufficient funds, Plaintiff's counsel shall notify Defendants' counsel of the Default via electronic mail at joshualim@kcllawfirm.com ("Notice"). Defendants shall have ten (10) business days from the Notice date to cure the Default. In the event that a Default is not timely cured, Kim shall be entitled to file the Affidavit of Confession of Judgment in the amount of ONE HUNDRED THIRTY THOUSAND DOLLARS ($130,000.00), less any Settlement Payments already made.

3. **Release:** For and in return for the total payment specified above, Kim knowingly and voluntarily releases and forever discharges the Defendants, their parent and affiliate companies, subsidiaries, divisions, business units, committees, groups, insurers and their predecessors, successors, assigns, trustees, administrators, executors, agent, accountants, attorneys, as well as their former and current employees (collectively referred to as "Releasees"), which Kim, or Kim's heirs, executors, administrators, successors, and/or assigns, may now have or hereinafter can, shall or may have relating to Plaintiff's alleged unpaid minimum wage and overtime pay arising from Plaintiff's claims under the Fair Labor Standards Act, 29 U.S.C. § 201 and for alleged unpaid wages, tips, minimum wage, overtime pay and spread-of-hours compensation arising from the Plaintiff's claims under the New York Labor Law as well as § 650 et seq., including Part 142, § 142-2.2 and § 142-2.4 of Title 12 of the Official Compilation of Codes, Rules and Regulations promulgated by the

Case 1:17-cv-02233-PKC    Document 24    Filed 01/05/18    Page 7 of 10
DocuSign Envelope ID: C557DB20-611D-4EAF-B62F-180445BB561C
Case 1:17-cv-02233-PKC    Document 23-1    Filed 11/15/17    Page 3 of 6

Commissioner of Labor pursuant to the Minimum Wage Act (Article 19 of the New York State Labor Law), from the beginning of the world to the day and date this Agreement is fully executed.

4. **Tax Treatment.** Defendants makes no representations with respect to the taxability, in whole or in part, of the Settlement Payment. Employee agrees to be responsible for any taxes associated with the payments made to her hereunder. However, should any taxing or governmental authority make a determination that some or all of the payments hereunder should have been subject to withholdings, Employee shall be responsible for any additional taxes or penalties relating to such findings; and Employee shall hold Employer harmless for any damages, including, but not limited to, counsel fees, penalties, additional taxes and other such damages.

5. **Other Actions.** Kim represents that he has not filed or participated in any action, charge, complaint or proceeding of any kind against the Defendants, in any court or before any administrative or investigative body or agency (other than the Complaint described above).

6. **References/Employment Inquiries.** Defendants agree to provide neutral references for Kim in accordance with the terms of this section. Kim shall refer any requests for employment references by potential employers to the Human Resources department ("HR") of 32 Music. Defendants agree that any employment inquiries or reference requests which are directed to 32 Music's HR shall at most state dates of employment and positions held.

7. **Further Assurances**. The Parties acknowledge and agree that this Agreement serves to memorialize the terms of settlement which were agreed upon at a mediation session facilitated by Neal M. Eiseman of Goetz Fitzpatrick, LLP, on or about September 27, 2017.

8. **Binding Nature of Agreement.** This Agreement shall be binding upon each of the Parties and upon the heirs, administrators, representatives, executors, successors and assigns of each of them, and shall inure to the benefit of each party and to the heirs, administrators, representatives, executors, successors, and assigns of each of them.

9. **Entire Agreement.** This Agreement is intended by the Parties as a final expression of their agreement and as a complete and exclusive expression of its terms. This Agreement, which shall be deemed to be a contract under seal, shall supersede all prior discussions, promises, representations or understandings, oral and written, among the Parties in connection with the subject matter hereof.

10. **Construction.** The language of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties.

11. **Severability.** In the event that any one or more of the provisions of this Agreement is held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions will not be affected or impaired thereby. This Agreement shall survive the performance of the specific arrangements contained herein.

12. **Modification.** This Agreement may be amended, revoked, changed, or modified only upon a written agreement executed by all Parties. No waiver of any provision of this Agreement will be valid unless it is in writing and signed by all Parties.

Case 1:17-cv-02233-PKC   Document 24   Filed 01/05/18   Page 8 of 10
DocuSign Envelope ID: C55ZDB20-611D-4EAF-B625-180445BB561C
Case 1:17-cv-02233-PKC   Document 23-1   Filed 11/15/17   Page 4 of 6

13. **Counterparts.** This Agreement may be executed and delivered in one or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument. The parties agree that a faxed, scanned, or secured electronic signature shall have the same force and effect as an original signature and that this Agreement may be executed in counterparts by secured electronic signature software, fax, or pdf attachments to emails.

14. **Enforcement and Controlling Law.** This Agreement is made and entered into, and shall be subject to, governed by and interpreted in accordance with the laws of the state of New York and shall be fully enforceable in the courts of that state, without regard to principles of conflict of laws, and shall be interpreted as neutral as between the Parties, without regard to any presumptions, inferences or rules of construction based on the authorship of the Agreement. In addition to any and all other available remedies for the breach of any provision of this Agreement (none of which are waived in or by this Agreement), any party shall have the right to seek specific enforcement of this Agreement, except as to provisions which subsequently may be held invalid or unenforceable.

**PLEASE READ CAREFULLY BEFORE SIGNING. THIS SETTLEMENT AGREEMENT AND RELEASE HAS IMPORTANT LEGAL CONSEQUENCES.**

**IN WITNESS WHEREOF, the Parties have each executed this Agreement, signed as a sealed instrument, as of the last date written below.**

[signature page follows]

DocuSign Envelope ID: C557DB20-611D-4EAF-B62F-180445BB561C
Case 1:17-cv-02233-PKC   Document 24   Filed 01/05/18   Page 9 of 10
Case 1:17-cv-02233-PKC   Document 23-1   Filed 11/15/17   Page 5 of 6

MIN KIM

By: *Lucas Kim* (DocuSigned by: A7BC643BE8F1481)

Dated: 2017-11-01


HOWARD DU KYU PARK
On behalf of 32 Music Studio Corp.,

By: _____

Title:

Dated:


HOWARD DU KYU PARK
Individually,

By:_____

Dated:


Email address for online invoices to be sent to: (See § 2 above)

_____

MIN KIM

By:_____

Dated:


HOWARD DU KYU PARK
On behalf of 32 Music Studio Corp.,

By: _____

Title: Owner

Dated: Nov. 14, 2017


HOWARD DU KYU PARK
Individually,

By: _____

Dated: Nov. 14, 2017


Email address for online invoices to be sent to: (See § 2 above)

howardpark597@hotmail.com